**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| LORENZO O. BARNETT, <br> individually and on behalf of the class <br> defined herein, <br><br>      Plaintiff, <br><br>    vs. <br><br> ERIN CAPITAL MANAGEMENT, LLC, <br><br>      Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

```
FILED: JULY 2 , 2008
    08CV3776
    JUDGE GETTLEMAN
    MAGISTRATE JUDGE VALDEZ
    NF
```

### COMPLAINT – CLASS ACTION

### MATTERS COMMON TO MULTIPLE CLAIMS

### INTRODUCTION

1. This action seeks redress for the conduct of defendant, a debt buyer, in filing collection actions on purported debts to which it did not have lawful title and without being authorized to engage in such actions.

### ILLINOIS NEW STATUTORY SCHEME

2. In order to protect Illinois residents, the Illinois Collection Agency Act, 225 ILCS 425/1 et seq. ("ICAA"), was amended effective January 1, 2008 to define debt buyers as "collection agencies".

3. Section 425/3(d), as amended effective Jan. 1, 2008, brings debt buyers within its purview by providing that "A person, association, partnership, corporation, or other legal entity acts as a collection agency when he or it . . . Buys accounts, bills or other indebtedness and engages in collecting the same."

4. Previously coverage was limited to a person who "Buys accounts, bills or other indebtedness with recourse and engages in collecting the same". By deleting "with recourse," the legislature intended to classify as a "collection agency" persons such as the defendant who buy charged-off debts for their own account.

1

5.      The ICAA creates a licensing regime.  Section 4 of the ICAA, 225 ILCS 425/4, provides:

> **Sec. 4. No collection agency shall operate in this State, directly or indirectly engage in the business of collecting, solicit claims for others, have a sales office, a client, or solicit a client in this State, exercise the right to collect, or receive payment for another of any account, bill or other indebtedness, without registering under this Act except that no collection agency shall be required to be licensed or maintain an established business address in this State if the agency's activities in this State are limited to collecting debts from debtors located in this State by means of interstate communication, including telephone, mail, or facsimile transmission from the agency's location in another state provided they are licensed in that state and these same privileges are permitted in that licensed state to agencies licensed in Illinois.**

6.      The licensing requirements of the ICAA were imposed to protect the public.  The  public policy represented by the ICAA is stated in §1a, 225 ILCS 425/1a:

> **Declaration of public policy**
>
> **Sec. 1a. The practice as a collection agency by any entity in the State of Illinois is hereby declared to affect the public health, safety and welfare and to be subject to regulation and control in the public interest. It is further declared to be a matter of public interest and concern that the collection agency profession merit and receive the confidence of the public and that only qualified entities be permitted to practice as a collection agency in the State of Illinois. This Act shall be liberally construed to carry out these objects and purposes.**
>
> **It is further declared to be the public policy of this State to protect consumers against debt collection abuse.**

7.      Sections 14 and 14b of the ICAA, 225 ILCS 425/14 and 14b, make it a crime to engage in the business of a collection agency without a license.

8.      Section 14a, 225 ILCS 425/14a, provides:

> **Sec. 14a. The practice as a collection agency by any entity not holding a valid and current license under this Act is declared to be inimical to the public welfare, to constitute a public nuisance, and to cause irreparable harm to the public welfare. The Director, the Attorney General, the State's Attorney of any county in the State, or any person may maintain an action in the name of the People of the State of Illinois, and may apply for injunctive relief in any circuit court to enjoin such entity from engaging in such practice. Upon the filing of a verified petition in such court, the court, if satisfied by affidavit or otherwise that such entity has been engaged in such practice without a valid and current license, may enter a temporary restraining order without notice or bond, enjoining the defendant from such further practice. Only the showing of nonlicensure, by affidavit or otherwise, is necessary in order for a**

2

**temporary injunction to issue. A copy of the verified complaint shall be served upon the defendant and the proceedings shall thereafter be conducted as in other civil cases except as modified by this Section. If it is established that the defendant has been or is engaged in such unlawful practice, the court may enter an order or judgment perpetually enjoining the defendant from further practice. In all proceedings hereunder, the court, in its discretion, may apportion the costs among the parties interested in the action, including cost of filing the complaint, service of process, witness fees and expenses, court reporter charges and reasonable attorneys' fees. In case of violation of any injunctive order entered under the provisions of this Section, the court may summarily try and punish the offender for contempt of court. Such injunction proceedings shall be in addition to, and not in lieu of, all penalties and other remedies provided in this Act.**

9.      In addition, the ICAA contains special assignment requirements in ICAA §8b, 225 ILCS 425/8b. Illinois courts had held prior to the amendment that a party that was required to but did not have such an assignment does not have a valid claim and that the defendant in such a case is entitled to judgment.  Business Service Bureau, Inc. v. Webster, 298 Ill. App. 3d 257; 698 N.E.2d 702 (4th Dist. 1998).

10.      Section 8b of the ICAA provides:

**Sec. 8b.  An account may be assigned to a collection agency for collection with title passing to the collection agency to enable collection of the account in the agency's name as assignee for the creditor provided:**

**(a) The assignment is manifested by a written agreement, separate from and in addition to any document intended for the purpose of listing a debt with a collection agency. The document manifesting the assignment shall specifically state and include:**

**(i) the effective date of the assignment; and**

**(ii) the consideration for the assignment.**

**(b) The consideration for the assignment may be paid or given either before or after the effective date of the assignment. The consideration may be contingent upon the settlement or outcome of litigation and if the claim being assigned has been listed with the collection agency as an account for collection, the consideration for assignment may be the same as the fee for collection.**

**(c) All assignments shall be voluntary and properly executed and acknowledged by the corporate authority or individual transferring title to the collection agency before any action can be taken in the name of the collection agency.**

**(d) No assignment shall be required by any agreement to list a debt**

3

**with a collection agency as an account for collection.**

**(e) No litigation shall commence in the name of the licensee as plaintiff unless: (i) there is an assignment of the account that satisfies the requirements of this Section and (ii) the licensee is represented by a licensed attorney at law. . . .**

11.     Furthermore, the assignment must be attached to the complaint. Candice Co. v. Ricketts, 281 Ill.App.3d 359, 362, 666 N.E.2d 722 (1st Dist. 1996).

12.     Finally, the assignee is required "in his or her pleading on oath allege that he or she is the actual bona fide owner thereof, and set forth how and when he or she acquired title. . . . "   735 ILCS 5/2-403(a).

## OBJECTIVE OF STATUTORY SCHEME

13.     The ICAA amendments were passed to curb several different types of abuses by debt buyers.

14.     One abuse was a substantial problem with debt buyers suing on debts that they do not own and have no right to sue on.

15.     There are multiple  reported cases in which debtors have been subjected to litigation because they "settled" with A and then B claimed to own the debt.   Smith v. Mallick, 514 F.3d 48 (D.C.Cir. 2008) (commercial debt purchased and resold by debt buyer, debt buyer [possibly fraudulently] settles debt it no longer owns, settlement held binding because notice of assignment not given, but obligor subjected to litigation as result).  See also,  Miller v. Wolpoff & Abramson, LLP, 1:06-CV-207-TS, 2008 U.S. Dist. LEXIS 12283 (N.D.Ind.,  Feb. 19, 2008), where a debtor complained he had been sued twice on the same debt; Dornhecker v. Ameritech Corp., 99 F. Supp. 2d 918, 923 (N.D.Ill. 2000), where the debtor claimed he settled with one agency and was then dunned by a second for the same debt, and Northwest Diversified, Inc. v. Desai, 353 Ill.App.3d 378, 818 N.E.2d 753 (1st Dist. 2004), where a commercial debtor paid the creditor only to be subjected to a levy by a purported debt buyer.

16.     In Wood v. M&J Recovery LLC,. CV 05-5564, 2007 U.S. Dist. LEXIS

24157 (E.D.N.Y., April 2, 2007), a debtor complained of multiple collection efforts by various
debt buyers and collectors on the same debt, and the defendants asserted claims against one
another disputing the ownership of the portfolio involved.  Shekinah alleged that it sold a
portfolio to NLRS, that NLRS was unable to pay, that the sale agreement was modified so that
NLRS would only obtain 1/5 of the portfolio, and that the 1/5 did not include the plaintiff's debt.
Portfolio claimed that it and not Shekinah is the rightful owner of the portfolio.

> 17.    In Associates Financial Services Co. v. Bowman, Heintz, Boscia & Vician,
P.C., IP 99-1725-C-M/S, 2001 U.S. Dist. LEXIS 7874, *9-12 (S.D.Ind., April 25, 2001), later
opinion, 2004 U.S. Dist. LEXIS 6520 (S.D. Ind., Mar. 31, 2004), allegations were made that a
creditor had continued to collect accounts allegedly sold to a debt buyer.

> 18.    An article that appeared in the trade press shortly before the extension of
the Illinois Collection Agency Act to debt buyers stated:

>> More collection agencies are turning to the debt resale market as a place to pick up
>> accounts to collect on. Too small to buy portfolios directly from major credit
>> issuers, they look to the secondary market where portfolios are resold in smaller
>> chunks that they can handle.

>> But what they sometimes find in the secondary market are horror stories: The same
>> portfolio is sold to multiple buyers; the seller doesn't actually own the portfolio put
>> up for sale; half the accounts are out of statute; accounts are rife with erroneous
>> information; access to documentation is limited or nonexistent. . . . .

Corinna C. Petry, Do Your Homework; Dangers often lay hidden in secondary market debt
portfolio offerings. Here are lessons from the market pros that novices can use to avoid nasty
surprises, Collections & Credit Risk, March 2007, pg. 24, Vol. 12, No. 3.   The article quoted an
officer of an Illinois debt buyer who had purchased, or ostensibly purchased, bad paper.

> 19.    Courts have also dismissed  numerous collection and foreclosure lawsuits
 filed in the names of entities that did not own the purported debts.   In re Foreclosure Cases,
1:07CV2282 and 14 others, 2007 U.S. Dist. LEXIS 84011, 2007 WL 3232430 (N.D. Ohio Oct.
31, 2007); In re Foreclosure Cases, 07-cv-166 and 18 others, 2007 U.S. Dist. LEXIS 90812 (S.D.
Ohio Nov. 27, 2007); In re Foreclosure Cases, 521 F. Supp. 2d 650 (S.D.Ohio. 2007); In re

Foreclosure Cases, 07-cv-166 and 14 others, 2007 U.S. Dist. LEXIS 95673 (S.D.Ohio, Dec. 27, 2007); NovaStar Mortgage, Inc. v. Riley, 3:07-CV-397, 2007 U.S. Dist. LEXIS 86216 (S.D.Ohio, Nov. 21, 2007); NovaStar Mortgage, Inc. v. Grooms, 3:07-CV-395, 2007 U.S. Dist. LEXIS 86214 (S.D.Ohio., Nov. 21, 2007); HSBC Bank USA v. Rayford, 3:07-CV-428, 2007 U.S. Dist. LEXIS 86215 (S.D.Ohio., Nov. 21, 2007); Everhome Mtge. Co. v. Rowland, 2008 Ohio 1282; 2008 Ohio App. LEXIS 1103 (Ohio App. March 20, 2008) (judgment for plaintiff reversed because it failed to introduce assignment or establish that it was the holder of the note and mortgage); Deutsche Bank National Trust Co. v. Castellanos, 277/07, 2008 NY Slip Op 50033U; 18 Misc. 3d 1115A; 2008 N.Y. Misc. LEXIS 44; 239 N.Y.L.J. 16 (Kings Co., N.Y., Sup. Ct., Jan. 14, 2008); HSBC Bank USA, N.A. v. Valentin, 15968/07, 2008 NY Slip Op 50164U; 14 Misc. 3d 1123A; 2008 N.Y. Misc. LEXIS 229 (Kings Co., N.Y., Sup. Ct., January 30, 2008); HSBC Bank USA, N.A., v. Cherry, 21335/07, 2007 NY Slip Op 52378U; 18 Misc. 3d 1102A; 2007 N.Y. Misc. LEXIS 8279; 239 N.Y.L.J. 2 (Kings Co., N.Y. Sup. Ct., Dec. 17, 2007); Deutsche Bank National Trust Co. v. Castellanos, 15 Misc. 3d 1134A; 841 N.Y.S.2d 819 (Kings. Co., N.Y. Sup. Ct. 2007).

20.    Debt buyer American Acceptance filed a lawsuit alleging that a broker of charged-off debts sold it debts to which it did not have title. American Acceptance Co. v. Goldberg, 2:08cv9 (N.D.Ind.). Another debt buyer, Hudson & Keyse, filed suit alleging that the same debt broker obtained information about consumer debts owned by Hudson & Keyse and used the information to try to collect the debts for its own account, even though it didn't own them. Hudson & Keyse, LLC v. Goldberg & Associates, LLC, 07-81047-civ (S.D.Fla., filed Nov. 5, 2007). A similar suit, alleging that the broker resold accounts it did not own, was filed by Old National Bank, Old National Bank v. Goldberg & Associates, 9:08-cv-80078-DMM (S.D.Fla., Jan. 24, 2008).

21.    The same debt broker is accused in another complaint of selling 6,521 accounts totaling about $40 million face value which it did not own. RMB Holdings, LLC v.

Goldberg & Associates, LLC, 3:07-cv-00406 (E.D.Tenn., filed Oct. 29, 2007).   On May 29, 2008, a decision was issued in favor of the plaintiff in that case. RMB Holdings, LLC v. Goldberg & Associates, LLC, 3:07-cv-00406 (E.D.Tenn.), Dkt. # 24.  The decision finds (p. 2) that "RMB began making attempts to collect the accounts it purchased from Goldberg," even though "Goldberg never delivered title or ownership of the accounts to RMB."

22.    Other debt buyers have voiced similar complaints about defective title to debts.   "Florida Broker Faces Multiple Lawsuits," Collections & Credit Risk, April 2008, p. 8.

23.    Another abuse was that debt buyers would attempt to collect vaguely-described debts from the wrong persons.  In 2004, the Federal Trade Commission shut down a debt buyer called CAMCO headquartered in Illinois.  The following is from a press release issued by the FTC in connection with that case.

> . . . In papers filed with the court, the agency charged that as much as 80 percent of the money CAMCO collects comes from consumers who never owed the original debt in the first place. Many consumers pay the money to get CAMCO to stop threatening and harassing them, their families, their friends, and their co-workers.
>
> According to the FTC, CAMCO buys old debt lists that frequently contain no documentation about the original debt and in many cases no Social Security Number for the original debtor. CAMCO makes efforts to find people with the same name in the same geographic area and tries to collect the debt from them – whether or not they are the actual debtor. In papers filed with the court, the FTC alleges that CAMCO agents told consumers – even consumers who never owed the money – that they were legally obligated to pay. They told consumers that if they did not pay, CAMCO could have them arrested and jailed, seize their property, garnish their wages, and ruin their credit. All of those threats were false, according to the FTC. . . .  (http://www.ftc.gov/opa/2004/12/camco.htm)

## CONDUCT COMPLAINED OF

24.    Defendant Erin Capital Management, LLC, a debt buyer regulated by the ICAA since January 1, 2008, systematically files collection lawsuits without compliance with the ICAA licensing and assignment requirements and, therefore, without valid claims.

25.    In this action, plaintiff complains that such practice violates both the Fair Debt Collection Practices Act, 15 U.S.C. §§1692e and 1692f, the ICAA, and the Illinois

Consumer Fraud Act, 815 ILCS 505/2 ("ICFA").

## VENUE AND JURISDICTION

26.     This Court has jurisdiction under 15 U.S.C. §1692k (FDCPA), 28 U.S.C. §1331, 28 U.S.C. §1337, and 28 U.S.C. §1367.

27.     Venue and personal jurisdiction in this District are proper because:

     a.     Defendant's collection communications and activities impacted plaintiff within this District;

     b.     Defendant does business within this District.

## PARTIES

28.     Plaintiff is an individual who resides in the Northern District of Illinois.

29.     Defendant Erin Capital Management, LLC is a Delaware limited liability company with its principal offices in New York.  Its registered agent and office are Corporation Service Company, 80 State Street, Albany, NY 12207.

30.     Defendant Erin Capital Management, LLC does business in Illinois.

31.     Defendant Erin Capital Management, LLC is engaged in the business of enforcing charged-off consumer debts allegedly purchased from others against consumers.

32.     Defendant has stated on its Web site that "Erin Capital Management, LLC is a New York headquartered receivables management company primarily concerned with purchasing, collecting, and servicing non-performing credit card receivables and other consumer classes. Since its inception in 1999, Erin has managed more than $1 billion in purchased assets."

33.     Defendant Erin Capital Management, LLC pays almost nothing for the "rights" it acquires, less than ten cents on the dollar.

34.     Defendant Erin Capital Management, LLC regularly uses the mails and telephones to conduct its business.

35.     Defendant Erin Capital Management, LLC has been the plaintiff in more than 200 Illinois lawsuits filed since January 1, 2008 and seeking to collect consumer debts.

36.    Because the purported obligations were originally owed to other entities and were charged off prior to its involvement with them, Erin Capital Management, LLC is a "debt collector" as defined in the FDCPA.

37.    Erin Capital Management, LLC is also a "collection agency" as defined in the ICAA.

## FACTS RELATING TO PLAINTIFF

38.    On or about April 29, 2008, Erin Capital Management, LLC filed suit against plaintiff Lorenzo O. Barnett  in the Circuit Court of Cook County to collect a purported debt incurred for personal, family or household purposes.   Erin Capital Management, LLC claimed to have purchased the debt.

39.    According to the Web site of the Illinois Department of Financial and Professional Regulation, Erin Capital Management, LLC does not hold a collection agency license.

40.    The complaint filed against plaintiff Lorenzo O. Barnett by Erin Capital Management, LLC did not attach any sort of assignment.

41.    On information and belief, defendant did not have an assignment that complied with §8b of the Collection Agency Act.

42.    Defendant therefore did not have any sort of valid claim and knew or should have known that it did not have a valid claim.

## FACTS  – GENERAL

43.    Defendant Erin Capital Management, LLC regularly files lawsuits on debts it claims to have purchased without being licensed under the ICAA, without having an assignment that complies with ICAA §8b, and therefore, without a valid claim.

44.    Defendant knows or should know it has no valid claim, but files suit anyway because consumers are unlikely to realize the fact.

45.    On information and belief, based on a computer search of court records,

9

defendant has filed over 200 such lawsuits since January 1, 2008.

## CLASS ALLEGATIONS

46.    Plaintiff brings this action on behalf of a class, pursuant to Fed.R.Civ.P. 23(a) and 23(b)(3).  The class consists of (a) all individuals (b) against whom defendant Erin Capital Management, LLC filed a collection lawsuit (c) in Illinois (d) subsequent to January 1, 2008.

47.    The class is so numerous that joinder of all members is not practicable.

48.    On information and belief, there are at least 40 individuals against whom defendant Erin Capital Management, LLC filed a collection lawsuit in Illinois subsequent to January 1, 2008.

49.    There are questions of law and fact common to the class members, which common  questions predominate over any questions relating to individual class members.  The predominant common questions are:

       a.    Whether defendant is unlicensed;

       b.    Whether defendant engages in a practice of filing lawsuits without attaching  to the complaint an assignment that complied with §8b of the ICAA.

       c.    Whether such lawsuits are therefore subject to a defense of which defendant knows or should know about.

       d.    Whether such practice is an unfair or deceptive.

       e.    Whether defendant violates the ICAA.

50.    Plaintiff's claim is typical of the claims of the class members.  All are based on the same factual and legal theories.

51.    Plaintiff will fairly and adequately represent the class members.  Plaintiff has retained counsel experienced in class actions and FDCPA litigation.

52.    A class action is superior for the fair and efficient adjudication of this

matter, in that:

      a.    Individual actions are not economically feasible.

      b.    Members of the class are likely to be unaware of their rights;

      c.    Congress intended class actions to be the principal enforcement

mechanism under the FDCPA.

### COUNT I – FAIR DEBT COLLECTION PRACTICES ACT

53.    Plaintiff incorporates paragraphs 1-52.

54.    The filing and prosecution of collection lawsuits notwithstanding a known

defense, in the hope that the consumer will not raise the defense, is both a deceptive collection

practice, in violation of 15 U.S.C. §§1692e, 1692e(2), 1692e(5), and 1692e(10), and an unfair

collection practice, in violation of 15 U.S.C. §1692f.

55.    Since <u>Kimber v. Federal Financial Corp.</u>, 668 F. Supp. 1480, 1488

(M.D.Ala. 1987), "bringing a lawsuit to which there appears to exist a complete defense" in the

hope that the consumer will not realize it exists and will default or pay has been a violation of the

FDCPA.

56.    In addition, by filing suit defendant misrepresents that it has proper title to

the debt and the right to file suit, when this is not true.

57.    Section 1692e provides:

**§ 1692e.    False or misleading representations [Section 807 of P.L.]**

**A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section: . . .**

**(2)    The false representation of--**

**(A)    the character, amount, or legal status of any debt; . . .**

**(5)    The threat to take any action that cannot legally be taken or that is not intended to be taken. . . .**

**(10)    The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a**

consumer. . . .

58.    Section 1692f provides:

§ 1692f.    **Unfair practices [Section 808 of P.L.]**

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . .

WHEREFORE, the Court should enter judgment in favor of plaintiff and the class and against defendant for:

(1)    Statutory damages;

(2)    Actual damages;

(3)    Attorney's fees, litigation expenses and costs of suit;

(4)    Such other and further relief as the Court deems proper.

## COUNT II – ILLINOIS COLLECTION AGENCY ACT

59.    Plaintiff incorporates paragraphs 1-52.

60.    Defendant is a "collection agency" as defined in the ICAA.

61.    Defendant threatened and took collection action against plaintiff that defendant was prohibited from taking by the ICAA because defendant was not licensed.

62.    Defendant violated 225 ILCS 425/8b by filing suit without an assignment in the form specified therein.

63.    Defendant negligently or knowingly violated the following provisions of 225 ILCS 425/9:

. . .**(20) Attempting or threatening to enforce a right or remedy with knowledge or reason to know that the right or remedy does not exist.** . . .

64.    A private right of action exists for violation of the ICAA.  <u>Sherman v. Field Clinic</u>, 74 Ill. App. 3d 21, 392 N.E.2d 154 (1st Dist. 1979).

65.    Plaintiff and the members of the class were damaged as a result.

WHEREFORE, plaintiff requests that the Court grant the following relief in favor of plaintiff and the class and against defendant:

      a.      Compensatory, punitive and nominal damages, as appropriate;

      b.      Costs.

      c.      Such other and further relief as is appropriate.

### COUNT III – ILLINOIS CONSUMER FRAUD ACT

66.     Plaintiff incorporates paragraphs 1-52.

67.     Defendant's conduct as set forth above constitutes both unfair and deceptive acts and practices, in violation of ICFA §2, 815 ILCS 505/2.

68.     Defendant engaged in such conduct in the course of trade and commerce.

69.     Defendant engaged in such conduct for the purpose of obtaining money from and injuring the credit of plaintiff and others.

70.     Plaintiff and the members of the class were damaged as a result.

71.     The filing of collection lawsuits is regularly picked up and reported by credit bureaus.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class and against defendant for:

      a.      Actual damages;

      b.      Punitive damages;

      c.      An injunction against further violations;

      d.      Attorney's fees, litigation expenses and costs of suit;

      e.      Such other or further relief as the Court deems proper.


                              s/ Daniel A. Edelman
                              Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
Tiffany N. Hardy
EDELMAN, COMBS, LATTURNER
      & GOODWIN, L.L.C.
120 S. LaSalle Street, 18th Floor

Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## **JURY DEMAND**

Plaintiff demands trial by jury.

s/ Daniel A. Edelman
Daniel A. Edelman

T:\21646\Pleading\Complaint  --  assignment and license_Pleading.wpd

## NOTICE OF LIEN

        Please be advised that we claim a lien upon any  recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.


                        s/ Daniel A. Edelman
                        Daniel A. Edelman


Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
        & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)